Christopher Reed on behalf of Appellants LSI and EVAGO. I would like to reserve five minutes for rebuttal. The Board erred in finding that OCADA does not anticipate Claims 14 and 17. This was an error of law, not error of fact. There is no factual dispute that the encoding method of Table 8 of OCADA imposes a J-Constraint of 4 and the encoding method of Table 9 imposes a J-Constraint of 8. The University's own expert in fact admitted below that this calculation is correct. So each of these J-Constraints is less than 10, and thus each anticipates the sole disputed limitation of Claim 14 of the 611 Pact. Given this, the only way the was by interpreting Claim 14 to require more than it actually does. And the correctness of that interpretation is an issue of Claim Construction, a discourse to review de novo. Now specifically the Board erred in interpreting Claim 14 to require a complete, this word complete, Converter Apparatus that operates on more than... argument was newly raised and was late because raised for the first time at the oral argument before the Board. True, they went on and addressed the merits after that, but why isn't the lack of timeliness, an independent ground that precludes us from addressing the merits? For the reason Your Honor just stated, they went ahead and exercised their discretion to consider the argument. Well that doesn't mean it's not an independent ground. The Board and the Court makes alternative holdings all the time in case we disagree with one of them. So how can we reach your argument on the merits if you didn't even appeal the timeliness argument? I mean they may be wrong about whether you raised this late or not, but you didn't even because in effect we'd be asking the Court, this Court, to order the Board to do something they already did in the final written decision. Well not quite. I mean, do you have any case where this Court has said that if the Board goes on to address the merits after making a timeliness determination that the merits are properly before us? We don't have a case specifically that says that, stands for that proposition, Your Honor, but we do have a case, the Nike case, which we cite in our brief, where it says if the argument has been raised below and considered that it's properly before the Court. If you appeal it, but not if you don't appeal it. And our point, Your Honor, in not appealing that timeliness is that the Board considered it on the merits. So, I mean, what if we agree with them on the timeliness? What if we agree with them that you're untimely? The fact that they went on and heard it on the merits, would that preclude us from saying, well, we agree with the alternative ground, you're untimely, you're out? Well, with respect to the timeliness, one, the Board did get it wrong. You didn't appeal it, though, right? We deny in our opening brief that you did not appeal that determination. That's right. Because the Board exercised its discretion to consider the argument on the merits. I'm just curious why you didn't bother to appeal the alternative ground. I mean, clearly, if you'd appealed it and said the Board is wrong, we could have made that determination, either they're wrong or not. And if they're wrong, then we could address the argument on the merits. Well, the point is because they gave us an argument on the merits, is why we didn't appeal it. We saw that as... I thought that you, your argument was that you didn't appeal it because you thought that that ruling was dicta. Well, our argument, yes, because the Board... How can that be dicta? Well, in the sense that the Board has discretion whether or not to hear arguments that find timely or not timely. And here we clearly have a case where the Board exercised that discretion to go on to consider the argument on the merits and issue a decision on those arguments on the merits. And so by exercising its discretion in that way... That makes no sense to me. I mean, if the Board thought that its decision on timeliness was not going to be relevant or a binding holding by addressing the merits, why would they have made it in the first place? They would have just addressed the merits. You seem to be suggesting that the Board can't make alternative holdings of untimeliness and then saying, but if it is timely, here's what we think on the merits. But lower tribunals do that all the time in case we disagree with one of their holdings. It doesn't mean it's dicta or somehow it's waived. It just means it's an alternative holding. Well, they make alternative holdings on the merits of the dispute below. This is a procedural issue where they found an issue... where they had discretion. To challenge that would be an abuse of discretion. What's your support for the notion that an alternative holding can only be on the merits and can't be on procedural issues? Because this is a discretionary issue. And by virtue of exercising that discretion, we found that they had considered the argument on the merits and we appealed the merits argument. But they didn't say, we exercise our discretion to address this, even though there was a procedural problem. That's exactly what they did, Your Honor. When did they say that? They said that they found it untimely. They said, but even if it wasn't untimely, here is the untimeliness. Or it's not untimely, it's untimely, full stop. But if somebody disagrees, like us, here's what we think on the merits. And you can also affirm on the merits. Again, by virtue of the fact that they did go on to consider it, we felt that in a sense the Board was hedging in a sense of not having confidence in that timeliness. Of course it's hedging. I mean, how long have you been doing this? I know you've been doing this a long time. Isn't this what lower courts do all the time? If there are alternative basis for holding things, they make all of them so that the appellate court has a full record instead of just having to ping back and forth. If they just said untimely and it come up to us and we say we disagree and there's no decision on the merits, we have to send it back. I mean, this is not unusual. I mean, if it's that unusual, or if it went with your view, I would think you would have a case to cite for this proposition. But you clearly don't because trial courts make alternative holdings every single day. And by making alternative holdings that aren't necessarily, don't follow each other, it doesn't mean that one of them is dicta or somehow waived or not binding. It's just an alternative holding. It is an alternative holding, but in this instance we found no authority. Let me ask you this. You made your point. I get it. If we disagree with you that somehow by going on to the merits, the timeliness holding is no longer a ground to affirm on, or if we don't agree with you, if we think that the board's timeliness holding is a separate independent ground for affirmance, and you didn't appeal it, you're out, right? We did address the argument in our opening brief in terms of saying the why. No, no, no. You didn't appeal and say the board was wrong. You're not saying it's a separate ground. That's correct. Maybe you should spend some time going on and talking about your alternative ground. Yes, let's turn to the saying appeal. What I understand the board to have said about saying is that, yes, Sang was the inventor of his patent, but his invention built on this earlier publication, and that as a result, the fact is that you're relying on the material that was in the earlier publication rather than what was new in Sang, and therefore it's not prior art. So what's wrong with that? Well, that's where the board erred in considering the limitation regarding the imposing limitation of Sang, Your Honor. You would agree, wouldn't you, that if somebody gets a patent and he says, I'm building on prior art A, and my invention is adding B to the prior art, that that doesn't make him the inventor of A, right? I'm sorry about Mr. Reed, and I hope that he recovers and is well, and appreciate your interest and willingness in continuing with the art of Mr. Maile. Maile? Maile. Maile, Your Honor. Okay, we've given you an additional five minutes. I have ten minutes, and we were starting on the alternative argument here about Sang, right? I think I was asking a question that if we have a situation in which there is an inventor of a patent, but he's building on prior art, contributes B to the existing prior art of A, that doesn't make him an inventor of A, does it? I agree with you, Your Honor. In that scenario that you laid out, both A and B would both have patents. It would be a later patent with an improvement. It might be a species on a generic idea. They would both get patents. But here, importantly, B filed first. And I would direct you to page 32 of our reply brief. In the Duncan Parking case itself, the Duncan Parking court cited a precedent from the CCPA called In Re Carrera. And the scenario there was like it is here, where the earlier filed patent claimed a species, and the later filed patent was generic. The earlier filed claim is by another because the later filed patent did not invent the species that was in the earlier. Well, that would be true, but I don't think the board was relying on the later filed patent. It was relying on the earlier paper or report or whatever it was called. Correct. Right. Your Honor, that's for conception. That's right. We don't dispute that Dr. Moon had a conception of what he disclosed earlier. We don't dispute that. What we do dispute is that what Dr. Moon invented and disclosed in the Seagate Annual Report is not what Dr. Sang patented. In fact, Dr. Sang's code is impossible using the block code. Wait, I'm sorry. I'm getting confused. So Moon and Brickner had this earlier report, and that was built on by Sang in his patent. And it's the earlier report by Moon and Brickner that found its way into the 601 patent that we're dealing with here. Right? That's correct. Then how does Sang become an inventor of the material from Moon and Brickner that he relied on as prior art in his own patent? We are not arguing that Sang becomes the inventor of the Seagate Annual Report. Sang is the inventor of Sang's patented method. That is what LSI relied upon. And that patented method, what Sang invented, is not disclosed in the Seagate Annual Report. And if you look to the Duncan parking test, remember there's three steps from this one. But is what Sang invented the material that you're relying on for prior art? Yes. Sang invented prior art. This is 102E. His earlier filing date means it's prior art. And there's no dispute below that Sang's method, if it counts as by another, does factually anticipate every element of the 601 patent. The only issue here is who invented Sang. And in Duncan parking, that's the first question. He looked at what did the petitioner rely upon in the IPR to show anticipation. That's the first question. We relied upon Sang's claims. He's the only inventor on his patent. He invented and patented a novel method that is not in the Seagate Annual Report that improved upon Moon and Brickner's basic idea by making the code more efficient where you could pack more data on the disk. And he does it in a completely different way, the state-dependent kind of dynamic encoding. And the Sang patent is very long. It has over 220 Boolean equations to enable what he did. It's something that could be used in a commercial device. Moon and Brickner had a basic idea of the basic idea of MTR encoding, and their idea was a block code. That's not what Sang did. And when Sang filed first, he is prior art. It's not what Sang did, but isn't that what you're relying on as prior art to the 601 patent? No, Your Honor. We relied on Sang's claims, which claim the state-dependent encoding method that Dr. Moon admitted. He was questioned in his deposition below. Dr. Moon admits that Sang invented the state-dependent code. U.M.'s expert admitted in deposition that the state-dependent code was not part of the Seagate Annual Report. That's what we relied on. It is an improvement. And again, to Your Honor's question, if he had filed later, if Sang had filed later, there would be two patents out there. But the 601 patent is not relying on the state-dependent aspect. The claims cover it. So if the claims didn't cover it, we wouldn't be here for anticipation. So it has to cover it. So you can't just write an uber-generic claim that covers everything you didn't conceive of and then claim when someone improves on it, you can't say, oh, that's my invention. So in your scenario, if B was filed later, they would both get patents. That's precisely the reason the board got it wrong when B filed earlier. That's his invention, Mr. Sang. Okay. In the rebuttal plan, unless my colleagues have questions, why don't we hear from Mr. McElhinney. May it please the Court, Pat McElhinney, on behalf of the Regents of the University of Minnesota. The board properly confirmed that the Okada and Sang patents did not anticipate claims 14 and 17 of the 601 patent. And there are at least two or three principal reasons why the Court should affirm this decision. First, the board did not abuse its discretion in finding that the petitioners did not timely raise their new nine separate methods arguments in Okada by raising it for the first time at oral argument. And LSI waived any argument to the contrary by failing to address that in the opening brief, even though it's an independently sufficient basis to affirm the board's decision. If the Court reaches the merits with respect to Okada, substantial evidence supports the board's decision that it does not anticipate. And finally, with respect to the Sang patent, the board correctly addressed the relevant question under Americam, which is whether the portions of the reference relied upon his prior art. Here, that's the portions of Sang. And the subject matter of the claims in question, the claims... Well, they say that they're relying on the state-dependent aspect of Sang as well as the prior art contribution. What's your response to that? Well, I think it's multifaceted. First, it's a question of fact. Then the board, it's a quintessential question of fact as to what they're relying on. The board considered that argument and rejected it based on all the arguments and the evidence that was before it. Second, the fact that... How explicit was the board about whether the reliance went beyond the Moon and Brickner material? I think they were pretty explicit that... Where do we find that? Appendix 37-39 has a couple of paragraphs on what the petition relied upon in terms of Sang. It says, when considering the petition as a whole, we agree with patent owner that the petition relies solely on material disclosed in the Seagate report for anticipation of the challenge claim. And then it goes on and cites... They're saying that's wrong as a matter of fact, right? They are saying that's wrong, but there is substantial evidence that it is correct. What do we find in the petition that tells us that they were not relying on the state-dependent aspect of Sang? Well, the next paragraph, I think, on that page talks about to the... Well, that's, I guess, specific MTR rates. There is... It doesn't really matter. I mean, I think the citations in the petition at the pages that I've referred to, you have to trace back through it. That will get you there. But, well, should it help us show us where in the petition they make clear that they're just relying on the Moon-Brickner aspect of this and not the state-dependent aspect? There is some... In the beginning of the petition, there is a section in the beginning of the petition... What page are we talking about here? Petition, the appendix 170 to 173 has a lengthy discussion of references to Sang. And it doesn't really matter in terms of whether they rely on the state-dependent aspect for a couple of reasons. One is to the extent... Wait, before you go on, show... Where do they say, where do they tell us what it is that they're relying on? Is there some place in here where they mention  I don't think so, Your Honor. Appendix 170 to 171, they talk about the discussion of the MTR code, J equals 2. They pull out a figure which matches the material from the Seagate annual report. There is some discussion there about Seagate discloses an encoder comprising a finite state machine, but that doesn't really matter with respect to the steps of Duncan Park that require you to look at the claims versus the relevant portion of the reference, if you hear the reference being sang. I think the court had it right when it said if Moon invented A and they added B, the fact that they added B and claimed B, or claimed the combination of A plus B, does not mean that they're suddenly the inventor of A. Well, they seem to agree with that, right? Well, I think that's true, but to the extent then that they say the state-dependent machine is something different that isn't disclosed, and there is evidence in the record from our expert that it is disclosed, but to the extent that it's different, and you accept that as... We can't very well go on that ground because that's not been addressed by the board. Well, but to the extent that you accept their argument that the state-dependent thing is different from what Moon and Bruckner invented, that suggests... They admit that it's... As I understand what they're saying, they admit it's different from what Moon and Bruckner invented, but they're saying the state-dependent aspect of this thing was part of what we relied on for anticipation purposes because the claims cover the state-dependent embodiment or whatever you want to call it. I mean, that's my understanding of what they're saying, but the fact that... If the claims cover the state-dependent version of this, and part of that is, A, what Moon and Bruckner invented, the fact that there's a state-dependent aspect to it does not change that Moon and Bruckner invented A. Well, but if they're relying on both A and B for anticipation, then saying becomes an inventor of the prior art here, right? No, because it doesn't change the fact that A is still invented by Moon and Bruckner. Yeah, but how could it be that if you're relying on both A and B aspects of this, then it seems to me that you've got a problem because B was not invented by Moon and Bruckner, but by Tseng, and Tseng is not one of the inventors named on the 601 patent. Right, but you have to look at the portions of the reference that are being applied. Obviously, that's correct, but the question is, what are they relying on? Because they're suggesting they're relying on both A and B aspects of this for anticipation. You seem, and the board said, no, you're not, you're relying on only A, which is Moon and Bruckner. Correct. So did the board make a mistake in that? No, I mean, there's ample evidence, and it's cited in the petition, that in fact, that's what they relied upon, and the mere fact that they appended, they tagged onto the claims, which their expert never did parse to say, oh, here is where in the claims I find the elements of the Moon patent, of claims 14 and 17 of the Moon patent. There's no evidence of the record where they do that. There's some argument that the claims generally anticipate, but there's no evidence that they do that. The, if, you know, if they claim just the combination of A and B, the mere fact that they put that in the claim as opposed to just in the specification doesn't change the inventor of A. I mean, if Moon and Bruckner had invented a four-legged stool, and they added a back to it, and they claimed a chair with a four-legged stool plus a back, that fact, the mere fact that they claimed that does not change the fact. I'm not understanding how that could be true, because in order to show anticipation, you'd have to show that the back aspect of it was also in the prior art. No, that, I mean, we're not, we wouldn't be showing anticipation of the, of the same patent, we'd be showing anticipation of the Moon and Bruckner patent. And they would be relying on SANG to say, look, here's somebody in the prior art invented the stool. And the mere fact that they labeled, they put in a claim the stool and the back does not change. The claim in the 601 patent? Pardon? The claim in the 601 patent? No, the claim in the SANG patent is what they're relying on. Well, no, no, I understand, but the question, what they're saying is the 601 patent, your hypothetical, the claims cover the chair as well as the four legs, right? And they're saying that as a result of that, they had to rely on the SANG state dependent aspect as well as the prior Moon and Bruckner work in order to show anticipation. I don't think that's their argument, respectfully. I think what their argument is, is that the state dependent machine was different and beyond what was disclosed in the Moon and Bruckner patent. As a matter of fact, that's wrong. But they're saying it's different and therefore SANG is the inventor of it. And they conflate the question of whether there's an A and a B. They just want to say the claims generally anticipate what is in the Moon patent. So what I think the flaw in their argument is if they're pointing to the claims in the SANG patent and the claims in the SANG patent are for a stool plus a back and the stool was what was disclosed in the Seagate Annual Report and the 601 patent, they can't get there because the stool through the whole timeline is something that Moon and Bruckner invented. Well, sure, but it still is the question of whether in order to show anticipation of the 601 patent, they need to rely on the back as well as the stool. But they don't because we're not claiming the back. We didn't claim the back. That's the question. Yes, we didn't. The 601 patent doesn't claim the back and we don't need to rely on that piece of it. I mean, we don't need to rely on the state dependent piece in our claims and we don't rely on that. The claims that are at issue... How do we know that the claims of the 601 don't cover the state dependent aspect? I think that's what the board found. I mean, I don't think anyone argued that, that the claims cover the state dependent aspect of it. I think their argument is that they cited the claims and said that the board's determination of the relevant portions was wrong. And my only point in response is, it wasn't wrong even though they cited the claims because the relevant portions are still the portions that were invented by Moon and Brickner. And it doesn't help the analysis that those relevant portions are present in the claims versus the spec. So, with that, I'll address any further questions that the panel has. Okay, I think we're done now. Thank you. Thank you. Mr. Miley, could you maybe show us where you argue that the state dependent aspect of saying was necessary for the anticipation argument? Sure. Thank you, Your Honor. May it please the court. In the petition, first off, just to back up for a minute, there's a 102e challenge. We make our prima facie. We did not know at the time, or could we have known, that the university would come back and try to antedate and try to say that saying didn't invent. So we deal with that as the proceedings unfold. But on the first page of the IPR petition, which is appendix 127, we actually challenged OCADA under section 102e. I'm sorry, can you repeat what you just said? Right, Your Honor. So it's a 102e challenge. On the first page of the petition, we actually invoked 102g as well. And at that time, we could not have known how the university would respond to that. And we did not know that Amun and Brickner and Tsang collaborated in some respect. There was no way to know that. That came out in discovery. But what we relied upon from the beginning was the claims of Tsang. We showed that in both of our briefs, that in every claim element that was challenged, we relied on claims 1 to 6 of Tsang, which are on appendix, the actual claims of Tsang are in appendix 1092. The claims are pretty long and detailed. And claim 1 is the state-dependent method. Claims 4 and 5, sorry, claim 4, sorry, claim 5 specifies that the rate of the code is 5 over 6. That's right in the claim. That's impossible with what was disclosed in the Seagate annual report. Physically impossible to get to that code rate because there's not enough code words available that satisfy the J&K constraints under... Right, so Tsang came up with a different, well not a new method, kind of a complement to that to achieve that result. Right, I don't think it's analogous to like a stool adding it back. You can't, so this isn't something added on. No, I don't want to, I mean, I don't find that stool, not only helpful the way I understood it, but it's a separate piece. There's this other coding method that can be accomplished in some combinations, but the 5 and 6 has to have a new invention on top of it to accomplish it, right? Correct. Does the patent, their patent, cover the 5 and 6 and the new coding method? Because it seems like they say it doesn't. That's why it anticipates, and I would just note that they did not have their expert, in their expert declaration, their expert only addressed Okada. They have zero expert testimony on Tsang. And we asked him at his deposition, this is in our brief, do you take any position on whether it's prior art? He said no. Do you take any position on whether it discloses every element? He said no. So you're saying their patent actually claims this complement, the supplement that Tsang invented to accomplish the 5 to 6? It covers it, yes. Where? I mean, it doesn't, because, I mean, this technology is very hard for me, and it's, I tried, but it seems like that portion of Tsang is doing something different, which is using two successive things to create one of the items. Is that anywhere in their patent, that method? It's not enabled or described, but the claim literally, the claim 13 is written in such a broad fashion, it just says take M bits, data, and convert it to N, where N is greater than M, impose J, and impose K. However you like. The claim is, I mean, we challenged it at written description and enablement, and 101 at the district court hasn't been decided. But that's how broad their claim is. They cover everything under the sun. To make it a better analogy would be if someone wrote a claim that said a method of treating cancer. Wait, but if it's not enabled or described, then they didn't invent it. Well, I think those are two different questions. They disclosed what they've claimed. It doesn't satisfy 112. Well, I mean, how do we know that? Do we know that they would agree that their claim should be construed that broadly to include something that I think they would concede that they didn't, or they would argue they didn't intend it to be, because it's not enabled or. They filed a lawsuit that covers very complicated technology that's nothing like their patent state-dependent code. So we wouldn't be here today if they didn't think their claims covered every method. Well, it sounds like if that's the case, then they've conceded that they don't infringe the 5-6 SANG method. I haven't heard them say that. I'd be thrilled if they did. The complaint in the case. They just said they didn't invent that. But the 601 patent doesn't cover that. Well, the SANG is not the accused, to be clear. The 5-6 is not the cover part. That's not what's exactly accused. It's something even more, much more complicated than that. But in the complaint in the underlying district case, and we did cite this in our opening brief. I see I'm over my time. If I could just finish this. No, worry about it. The complaint of the case says that claim 13 covers every possible method of MTR encoding. They said it's impossible to do MTR coding without infringing claim 13. That's what they've said. So under that theory, practicing SANG would infringe the 601 patent. If it came later, but it came earlier. So, yes, it anticipates. That's why it anticipates. He filed first. It's different. His method can't be. I guess the problem, and this is pretty complicated, is that in order to show anticipation, if a claim covers everything that uses A, it also covers a method that uses A plus B. And that would seem to be what the situation is here, perhaps. The 601 patent covers a Moon and Bruckner plus SANG, but it's also infringed if you just use Moon and Bruckner without using SANG. That's correct. The only part I would disagree with a little bit is that SANG isn't like A plus B. It's not like they're adding on. It's a different method. The claim covers it. But even if it was just A plus B and Mr. SANG was only a joint inventor, under this Court's precedent, that would still be by another. The inventive entity of the claims that are challenged, which is Moon and Bruckner, has to be identical to the anticipating disclosure in order to be not by another. So if SANG even gets partial credit for his own patent, we win. Even if we conceive of them as two separate inventions? Especially if they're two separate inventions. The claim covers it. But he didn't invent it. I mean, let's just assume that Moon and Bruckner invented the coding thing that's in their patent, and that SANG's description of that in his patent is just describing what the prior art does, and he's adding on this new method to deal with this very special 5-6 translation. Did he invent that general MTR method? SANG did not invent the general MTR method. But we don't rely upon, and this is a critical point. But isn't that the part that you need to rely on to find their? Again, put aside the notion that their patent covers the 5-6, because I think I'm not sure that that's correct, or that the board found that, or there's evidence there. If we're not talking about their patent covering the 5-6, but just the general MTR method, and there's no dispute that Moon and Bruckner invented it, and what SANG does is invent something that makes it possible for the 5-6 method, but he didn't come up with the general method, why would that make it anticipating? So under the Duncan parking test, the first step is to look at what was relied upon as anticipation. That's the first step. And then the second steps are about... Okay, let me stop you there, because this is where I'm trying to follow what the board did. Let's assume what the board relied on, and assume it was correct to do this, was in, and looked at it in what you were citing in SANG, which just the Moon and Bruckner part, and wasn't the SANG contributed part, then that would be by the same entity, wouldn't it? Correct. Okay. But you just disagree with that. Right. That's not what we relied upon. And SANG goes out at the beginning of the patent, it's like on column 2 to 3, and he actually explains why the rate 4 over 5 block code from Moon that he collaborated with can't get higher than rate 4 over 5. If you have four data words, you need 16 code words to go with it. If there's five, that's 2 to the 5, there's 32 choices, but I think 18 of them don't satisfy the constraints. But again, if the board didn't think that their patent covered the 5 to 6 method, and it only covered the more general encoding methods that were invented by Moon et al, then this whole 5 to 6 discussion, even though you're saying we're relying on this, because this discloses all of this in the context of this specific problem. Why isn't the board's finding supported by substantial evidence? I don't think that's what the board did. I'm not sure I understand your hypothetical. I think what the board said... Well, I think what the board said was, we have to determine what portion of SANG you're arguing anticipates their patent, and the board looked at it and said, you're just relying on the portion that wasn't invented by SANG. And I know there's factual disagreements about that, but if that's... If they were right on that, we should affirm, right? If it was right, it's not. Okay, so that's the issue. Right. So yeah, we're not debating that. We relied upon the claims, and the evidence that supports our position was, one, Mr. Moon... First, it's not some reference. We're not using some, like, IEEE article. It's a U.S. patent. He's the only listed inventor. The case law says there's a presumption he's the inventor. So we're talking about the claims that we relied upon. Two, Mr. Moon was asked whether he should be in the inventor on the SANG patent. He said no. That's the only fact-witness testimony in the entire record testified for us. Minnesota's expert did not address SANG anywhere in his declaration. There was a paper that Moon and Brickner authored in 1997, which was a year after SANG. They eventually did come up with a state-dependent code in a 1997 paper, and they explained how great it was and how different it was over their block code, but SANG had already filed a patent a year earlier. And lastly, one of Minnesota's own exhibits in the IPR below was an article written by Seagate, which SANG was an employee of. Mr. SANG's boss, who's unfortunately deceased, Mr. Coast, in the article, credits Mr. SANG and not Moon and Brickner with the relied-upon MTR codes. I guess if we look at 170, and this is your petition, I mean, I see in that alternative paragraph, alternatively paragraph, which is the second full paragraph to the bottom, you're saying, I guess, the same thing you're saying now, that the limitation reads on state-dependent or block encoders or their equivalents. Yes, Your Honor, the claim is written in very generic, just says convert M to N, have J and K. It doesn't say how to do it, so it covers the way that SANG did it. But SANG invented that method on his own. But it also covers a method that doesn't use SANG. That's correct. So if we relied upon a different method, like it was exactly the one from Moon and Brickner, we would lose. But that's not what we relied upon. So when the board said that we relied upon... But if their patent only covers the method invented by Moon and Brickner, then wouldn't, by definition, you be relying on that to anticipate? Because if their patent only covers that method, then the method SANG created couldn't anticipate. I think that's the way I read the board's decision. I mean, they're saying their patent doesn't cover the method invented, the special method invented by SANG. It only covers the stuff Moon and Brickner invented. I understand. That reading never occurred to any of us. We don't see it that way, respectfully. For some reason, they actually said we didn't rely upon SANG's state-dependent, but we relied upon the claims for every limitation. We did rely upon SANG's claims. There's no evidence in the record that SANG didn't invent that. All the evidence in the record, including from every witness that testified, including Dr. Moon himself, is that SANG invented those codes. Did the board address the scope of the 601 claims in terms of whether they covered a state-dependent method? I don't think that the board did, and University of Minnesota didn't challenge that. They didn't challenge our showing in the petition. They only said it's not by another. There was no dispute that the claims cover SANG. They never disputed that. They had no expert testimony, no fact testimony, no lawyer argument, nothing. That was all completely one. I think what we're getting hung up on here is the difference between section 112, like what a claim literally covers and what they have support for. The claim is written way more broad than they have support for. That's why it reads. Let me ask it this way. We read the board as saying their patent doesn't cover the SANG state-dependent stuff. It just covers what Moon and Brickner invented. Therefore, the part of SANG that you're relying on is Moon and Brickner's contribution, so it can't be used to anticipate. Then isn't a decision along those lines essentially saying their patent doesn't cover the state-dependent claims? Whatever happens in the future, they can't try to capture that ground back. Again, I would be thrilled if that was what the part said, or if this court says it only covers... You'd agree, and I thought you agreed earlier, that if that's the case, if the claims don't cover the state-dependent aspect of it, that you lose, we affirm. That's correct. If the claims don't cover what we relied upon, if the claims don't even cover it, you don't have to worry about if it's by another. That's not what's on appeal, though. That was never defended by the university. They only made the argument, so there's no other argument preserved. It was the only argument the board addressed. With respect, I just don't see it that way. It can't be that they're arguing that what everybody agrees SANG contributed independently was invented by their patent, because if it was, then it does anticipate, because he's the only one that invented that technique. Right. It's a head-scratcher. What we think the board said... Maybe the board makes mistakes sometimes, but I don't think they made that mistake of saying, well, it doesn't matter whether he invented this. They recognize that he invented a portion independently, but he said that portion doesn't matter to the anticipation issue here. Isn't that, by logic, saying their patent doesn't cover the SANG innovation? I don't see any other way to read the board decision. There's two. One, they said that we didn't rely... Incredibly, the board said that we didn't rely upon the state-dependent method. That's just flat wrong. We relied on the claims. He's the inventor on that. I think that's where it all unraveled for them. They say that we relied upon everything that was only in the Seagate Annual Report. That's wrong. What SANG did is impossible under what was in the Seagate Annual Report. Again, this isn't like A plus B. This is A and Z. They both are a method of encoding, but they don't overlap. You can't perform SANG's method with what was disclosed to SANG by Moon and Brickner. It's different. It's physically impossible to achieve the rate 6 over 7 code. The board also said somewhere that... I think this was probably related to their first thing where they said we didn't rely upon state-dependent. They said that SANG's contribution was just explaining the current state of the art. But again, that's also wrong. It's a different method. Not only different, it's better. It doesn't have to be better to be prior art, but it is a more efficient method. Okay. Thank you, Mr. Monk. Thank you, Your Honor. You did a good job in stepping in for Mr. Reed. Thank both counsel. The case is submitted.